## STATE OF CONNECTICUT *v.* PHILIP MORRIS, INC., ET AL.
### (SC 17548)

Vertefeuille, Zarella, Miano, Thim and Mack, Js.

Argued May 19—officially released September 12, 2006

*Joseph Rubin,* associate attorney general, with whom were *Robert W. Clark,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellant (plaintiff).

*Robert J. Brookhiser,* pro hac vice, with whom were *John F. Conway* and *Elizabeth B. McCallum,* pro hac vice, for the appellees (defendant Commonwealth Brands, Inc., et al.).

*Stephen R. Patton,* pro hac vice, with whom were *James H. Rolondo* and, on the brief, *R. Cornelius Danaher, Jr., Alexander Shaknes,* pro hac vice, *Douglas G. Smith,* pro hac vice, *Victoria Wood Chavey* and *Ben A. Solnit,* for R.J. Reynolds Tobacco Company et al. as amici curiae.

*Brett DeLange,* pro hac vice, filed a brief for the state of Alabama et al. as amici curiae.

*Opinion*

VERTEFEUILLE, J. The sole issue presented in this appeal is whether the current dispute between the defendants Commonwealth Brands, Inc., King Maker Marketing, Inc., and Sherman 1400 Broadway N.Y.C., Inc. (petitioners), and the plaintiff, the state of Connecticut (state), is subject to arbitration under the arbitration provision of the tobacco litigation master settlement agreement (agreement) to which the petitioners and the state are parties. The state appeals from the judgment of the trial court granting the petitioners' petition to compel arbitration. The state claims that the trial court improperly granted the petition to compel arbitration because the dispute between the parties is not subject to the agreement's arbitration provision. We disagree, and, accordingly, we affirm the judgment of the trial court.

The record reveals the following pertinent factual and procedural history. In 1996, the state brought an action against the major American tobacco companies and other related entities alleging that they were engaged in wrongful advertising and marketing of cigarettes and other tobacco products in Connecticut.[1] Thirty-nine other states initiated similar actions in their own courts. In 1998, the civil action initiated by the state was settled, without an admission of liability, when the Superior Court approved a consent decree that the parties submitted to it pursuant to the agreement. Equivalent settlements were reached in the similar actions pending in other states' courts. Under the agreement, the state and fifty-one other governmental entities (collectively, the settling states) agreed to dismiss the pending actions and release all past and future claims in return for the agreement of the four major tobacco manufacturers, Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Brown and Williamson Tobacco Corporation (collectively, the original participating manufacturers), to: (1) restrict the manner in which they market and advertise tobacco products; and (2) make substantial annual payments to the settling states.

As an incentive for additional tobacco manufacturers to join in the settlement, the agreement provides that such other manufacturers may agree to abide by the agreement in the future, and, in return, the settling states will release all past and future claims against them. The agreement refers to the manufacturers who agree to abide by it at some point after the agreement had been executed as " 'subsequent participating manufacturers.' " The petitioners in the present case are sub-

---

[1] In addition to the petitioners, the state had named thirteen other tobacco companies and related entities as defendants, including Philip Morris, Inc., the named defendant. Because this appeal involves only the petitioners, we refer to the other parties, where necessary, by name.

sequent participating manufacturers. Under the agreement, the subsequent participating manufacturers, like the original participating manufacturers, must make annual payments to the settling states.

The agreement provides that an independent auditor[2] will "calculate and determine the amounts of all payments owed pursuant to this [a]greement, the adjustments, reductions and offsets thereto . . . the allocation of such payments, adjustments, reductions, offsets and carry-forwards among the [p]articipating [m]anufacturers[3] and among the [s]ettling [s]tates . . . ." The agreement sets forth a detailed procedure by which the independent auditor is to calculate the annual payments due all settling states. In particular, the agreement directs the independent auditor, on the basis of a strict timetable, to request information that it needs to calculate the annual payments from the parties to the agreement, to deliver preliminary calculations to the parties to the agreement, and, finally, to deliver a final payment calculation that explains any changes from the preliminary calculations. In addition, the agreement provides a detailed set of rules to be followed by the independent auditor in calculating the annual payments. Specifically, the agreement directs the independent auditor to take a base amount owed by the participating manufacturers and apply various adjustments, offsets and reductions. In performing this calculation, the independent auditor is to apply these adjustments, offsets and reductions sequentially over thirteen steps. If any given step does not apply, the total from the prior step is then carried forward to the next step.

[2] Since shortly after the execution of the agreement, Pricewaterhouse-Coopers, LLP, has been engaged as the independent auditor.

[3] Participating manufacturers are defined under the agreement as both the subsequent and the original participating manufacturers. Hereinafter, we also will refer to these two groups collectively as the participating manufacturers.

The sixth step in the process is a downward adjustment to the annual payment that is to be applied if the participating manufacturers lose market share, in the calendar year for which the payment is being calculated, to manufacturers that did not participate in the agreement.[4] The agreement conditions the application of this nonparticipating manufacturer adjustment on a determination by a nationally recognized firm of economic consultants that the disadvantages caused by the agreement's provisions were a significant factor in the loss of market share.

The agreement also provides, however, that each settling state can avoid individually the application of the downward nonparticipating manufacturer adjustment if it has enacted a "qualifying statute" that is in full force and effect during the calendar year on which the payment is based and the state diligently enforced the statute during that calendar year. A qualifying statute is defined as a "statute, regulation, law and/or rule . . . that effectively and fully neutralizes the cost disadvantages that the [p]articipating [m]anufacturers experience vis-à-vis [nonparticipating manufacturers] within such [s]ettling [s]tate as a result of the provision of this [a]greement." The agreement contains a model qualifying statute that has been in substantial form enacted by all of the settling states, including Connecticut.[5] If a settling state is exempt from the nonparticipating

---

[4] Generally, there is a market share loss, under the agreement, if the aggregate market share of all participating manufacturers, in the calendar year immediately preceding the year in which the payment is due, is more than 2 percent less than the market share for all participating manufacturers in 1997.

[5] Such a qualifying statute was enacted in Connecticut as No. 00-208 of the 2000 Public Acts, which is now codified at General Statutes §§ 4-28h, 4-28i and 4-28j. In operation, this statute attempts to neutralize the participating manufacturers' cost disadvantage as compared to nonparticipating manufacturers by requiring the nonparticipating manufacturers to make payments into an escrow account based on their sales in Connecticut. See General Statutes § 4-28i (a) (2).

manufacturer adjustment, that portion of the adjustment that would have been applied to reduce the annual payment to that particular state is reallocated pro rata to the nonexempt settling states.

The root of the dispute that underlies the petition to compel arbitration in the present case is the independent auditor's calculation of the participating manufacturers' annual payments for the 2003 calendar year. In response to the independent auditor's request for information that it needed in order to calculate the annual payments for 2003, the petitioners sent a letter to the independent auditor requesting that it recognize a substantial nonparticipating manufacturer adjustment for that year. In their letter, the petitioners took issue with the independent auditor's failure to apply such an adjustment in the prior year because, in part, the settling states had represented that they had enacted qualifying statutes. The petitioners claimed that the independent auditor should not assume that just because a settling state enacted a qualifying statute, it was enforcing diligently that statute, and that, even if every settling state were enforcing diligently the qualifying statute, the nonparticipating manufacturer adjustment should apply nonetheless.

The settling states responded to the petitioners' letter to the independent auditor with a letter of their own, in which they argued that the nonparticipating manufacturer adjustment should not be applied until a significant factor determination had been made and that, even if such a determination has been made in favor of the participating manufacturers, the independent auditor should presume, in the absence of substantial evidence to the contrary, that state officials were enforcing the qualifying statute. In addition, the settling states rejected the petitioners' claim that the agreement allows a nonparticipating manufacturer adjustment to be

applied even if every settling state were enforcing dili-
gently its qualifying statute.[6]

After receiving the letters from the petitioners and
the settling states, the independent auditor released its
preliminary calculations of the 2003 annual payments.
In arriving at the annual payments due under the
agreement, the independent auditor did not apply a
nonparticipating manufacturer adjustment to reduce
the participating manufacturers' annual payments
because the national association of attorneys general
informed the auditor that all settling states had enacted
qualifying statutes and represented that these statutes
were in full force and effect since their effective date.
The independent auditor did not make an explicit find-
ing regarding whether the settling states diligently
enforced the qualifying statute during 2003.

Subsequently, one of the petitioners, Commonwealth
Brands, Inc., submitted a formal notice of dispute pursu-
ant to § XI (d) (3) of the agreement, in which it disputed,
inter alia, the independent auditor's failure to apply a
nonparticipating manufacturer adjustment to its 2003
annual payment. After the independent auditor sought
and received additional information and argument from
the parties regarding the disputed issue, it issued its
final calculation of the 2003 annual payments, in which
it treated the adjustment the same way as it had in
its preliminary calculations. In response to the final
calculation, one of the petitioners made a request to
the settling states that the dispute regarding the adjust-
ment be submitted to arbitration. The settling states
refused the request. Thereafter, the petitioners filed
with the Superior Court the present petition to compel

---

[6] In response to the settling states' letter, the petitioners submitted an
additional letter to the independent auditor. In this letter, the petitioners
reasserted in greater detail the positions that they took in their initial letter
and responded to the settling states' contention that the nonparticipating
manufacturer adjustment must await the significant factor determination.

arbitration of this dispute under §§ 2 and 4 of the Federal Arbitration Act, codified at 9 U.S.C. §§ 2 and 4, and General Statutes § 52-410.[7]

After extensive briefing and oral argument, the trial court granted the petitioners' petition to compel arbitration, concluding that the underlying dispute came within the agreement's arbitration provision. Specifically, the trial court noted that § XI (c) of the agreement provides in relevant part that "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the [i]ndependent [a]uditor . . . including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carry-forwards, and allocations described in subsection IX (j) . . . shall be submitted to binding arbitration . . . ." The trial court reasoned that, because one of the adjustments in § IX (j) of the agreement is the nonparticipating manufacturer adjustment, " 'any dispute concerning the operation or application' " of that adjustment is arbitrable under the agreement. The trial court concluded that the underlying dispute is arbitrable because it concerns both the operation and application of the nonparticipating manufacturer adjustment.

The trial court rejected the state's claim that the underlying dispute was not arbitrable because the arbitration provision limits the scope of arbitrable disputes to those that arise out of or relate to determinations that the independent auditor was empowered to make and that the independent auditor was not empowered to make a determination regarding the applicability of

---

[7] The petitioners also filed a similar petition in New York. The New York Supreme Court denied the petitioners' motion to compel arbitration. The Appellate Division of the New York Supreme Court, however, subsequently reversed the judgment of the trial court and directed the trial court to grant the petitioners' motion to compel arbitration. *State* v. *Philip Morris, Inc.,* 30 App. Div. 3d 26, 33, 813 N.Y.S.2d 71 (2006).

the nonparticipating manufacturer adjustment. The trial court reasoned that, even if we were to assume that the state's interpretation of the agreement was correct, the language and structure of the agreement make it abundantly clear that the independent auditor was, in fact, empowered to determine the applicability of the nonparticipating manufacturer adjustment.

Finally, the trial court observed that the agreement's referral of a dispute of this kind to binding arbitration is a wise policy decision because "it was one particularly effective way of ensuring . . . that all disputes, controversies and claims concerning the calculation and determination of payments under this massive, vitally important settlement agreement, be resolved under one clear set of rules that apply with equal force to every settling state . . . . If interpretations of such rules were left exclusively to the courts of the individual settling states . . . fifty-two different sets of payment rules might emerge . . . ." This appeal followed.[8]

On appeal, the state claims that the trial court improperly granted the petition because the underlying dispute does not fall within the agreement's narrow arbitration provision. The state asserts that the arbitration provision in § XI (c) of the agreement is limited to the review of " 'calculations' and 'determinations' that are actually committed to, and actually made by, the [i]ndependent [a]uditor in the first instance." The state further contends that the question of whether the nonparticipating manufacturer adjustment should have been applied to the petitioners' 2003 annual payments is itself comprised, in part, of two predicate determinations: the significant factor determination and the determination of whether a settling state is enforcing diligently its

---

[8] The state appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

qualifying statute. The state claims that, because both of these predicate determinations are outside the scope of the independent auditor's authority and these determinations have not been made by the appropriate body, the question of whether the nonparticipating manufacturer adjustment applies is not yet arbitrable. The state contends that a contrary interpretation would lead to absurd results because if a dispute could be arbitrable despite the independent auditor's lack of authority to make the underlying determination or calculation, then any dispute would be arbitrable under the agreement by simply asking the independent auditor to "determine" something.

In response, the petitioners claim that the trial court properly concluded that the underlying dispute was subject to the agreement's arbitration provision. The petitioners contend that, because the underlying dispute is over the independent auditor's determination not to apply the nonparticipating manufacturer adjustment, it falls within the agreement's arbitration provision, which provides that disputes concerning the operation and application of the nonparticipating manufacturer adjustment are arbitrable. The petitioners claim that any doubt as to whether the dispute over the independent auditor's determination not to apply the adjustment is arbitrable is removed by the agreement's use of such broad language to define the scope of the arbitration provision as applying to " 'any' disputes 'arising out of or relating to' " the independent auditor's determinations and calculations. The petitioners reject the state's claim that the predicate determinations as to whether the nonparticipating manufacturer adjustment applies are limitations or preconditions to arbitration because the agreement's arbitration provision does not contain such limitations. Alternatively, the petitioners contend that, even if the state's interpretation of the arbitration provision were correct, the

independent auditor was empowered to determine the applicability of the nonparticipating manufacturer adjustment. Finally, the petitioners argue that the trial court's interpretation of the contractual language is supported by the well settled presumption that any ambiguities are resolved in favor of arbitration and by the need for uniform rules governing the calculations of the participating manufacturers' annual payments.[9] We agree with the petitioners.

We begin by setting forth the principles that guide our resolution of the present appeal. "[A]rbitration is a creature of contract. . . . It is designed to avoid litigation and secure prompt settlement of disputes . . . . [A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." (Internal quotation marks omitted.) *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 72, 856 A.2d 364 (2004). "The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention." *A. Dubreuil & Sons, Inc.* v. *Lisbon*, 215 Conn. 604, 608, 577 A.2d 709 (1990). The parties' intent is "determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.

[9] The original participating manufacturers filed a brief, as amici curiae, in support of the position of the petitioners. Like the petitioners, the original participating manufacturers contend that the trial court properly concluded that the underlying dispute fell within the broad language employed in the agreement's arbitration provision and that the nationwide effect of any resolution of the underlying dispute requires that it be referred to nationwide, binding arbitration.

. . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Goldberg* v. *Hartford Fire Ins. Co.*, 269 Conn. 550, 559, 849 A.2d 368 (2004).

Although the intention of the parties typically is a question of fact, if their intention is set forth clearly and unambiguously, it is a question of law. *Levine* v. *Advest, Inc.*, 244 Conn. 732, 746–47, 714 A.2d 649 (1998); *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 92, 709 A.2d 540 (1998); see also *Paine Webber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 190, 585 A.2d 654 (1991) (parties' intent is not question of fact "where the contract language is definitive"). Because neither party argues that the language of the agreement's arbitration provision is ambiguous, our review of the parties' intent is plenary.[10] See *PSE Con-*

---

[10] This court has also stated that "[b]ecause we favor arbitration, we will defer to this alternative method of dispute resolution if the contractual arbitration provisions fall within the grey area of arbitrability, employing the positive assurance test as set out in *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960). Under this test, judicial inquiry . . . must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Internal quotation marks omitted.) *Board of Education* v. *Wallingford Education Assn.*, 271 Conn. 634, 639, 858 A.2d 762 (2004); accord *Quigley-Dodd* v. *General Accident Ins. Co. of America*, 256 Conn. 225, 246, 772 A.2d 577 (2001).

The state claims that, because the United States Supreme Court in *Wright* v. *Universal Maritime Service Corp.*, 525 U.S. 70, 78–79, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998), limited the applicability of the positive assurance test to only the interpretation of arbitration provisions in collective bargaining agreements, the positive assurance test should not be applied in the present case. Because we conclude that the underlying dispute in the present case does not fall within the grey area of arbitrability under the agreement, we need not employ this test or reach the state's claim regarding its inapplicability.

*sulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 290–91, 838 A.2d 135 (2004).

As with any question of contract interpretation, we begin with the pertinent language of the agreement. Section VII (a) of the agreement provides in relevant part that the Superior Court, which entered the consent decree, retains "exclusive jurisdiction for the purposes of implementing and enforcing this [a]greement . . . and . . . *except as provided in [subsection] XI (c)* . . . [it] shall be the only court to which disputes under this [a]greement . . . are presented . . . ." (Emphasis added.) Accordingly, § XI (c) establishes an exception to the Superior Court's otherwise exclusive jurisdiction over the agreement's implementation and enforcement. Section XI (c) provides for binding arbitration before a panel of three arbitrators, each of whom shall be a former federal judge, of "[a]ny dispute, controversy or claim arising out of or relating to calculations performed by, or any determinations made by, the [i]ndependent [a]uditor . . . including, without limitation, any dispute concerning the operation or application of any of the adjustments, reductions, offsets, carryforwards and allocations described in subsection IX (j) . . . ."

Although the agreement thus limits the subject matter of the disputes that are arbitrable, it employs broad language in defining the scope of the disputes that fall within that subject matter. Specifically, the arbitration provision provides that "[a]ny dispute, controversy or claim *arising out of or relating to*" the independent auditor's calculations and determinations is arbitrable. (Emphasis added.) Section XI (a) (1) of the agreement provides in relevant part that the independent auditor "shall calculate and determine the amount of all payments owed pursuant to this agreement, [and] the adjustments . . . thereto . . . ." Pursuant to § XI (a) (1), the independent auditor calculated the annual pay-

ments owed by the participating manufacturers for 2003 to the settling states. As we have discussed previously herein, § IX (j) describes the steps that the independent auditor must take in calculating the participating manufacturers' annual payments and the sixth step in that process is the application of the nonparticipating manufacturer adjustment. Thus, the independent auditor, in calculating the annual payments, had to determine whether to apply that adjustment. Accordingly, we conclude that the underlying dispute over the independent auditor's decision not to apply the adjustment falls within the scope of the arbitration provision because it directly involves a *determination* of the independent auditor. Moreover, this dispute also *arises out of or relates to* the independent auditor's *calculation* of the annual payments because its determination not to apply the nonparticipating manufacturer adjustment resulted in it *calculating* higher annual payments than if it had determined that the adjustment should apply.

Our conclusion that the underlying dispute is arbitrable is buttressed by referring to the specific examples of arbitrable disputes enumerated in § XI (c) of the agreement. Section XI (c) provides that such arbitrable disputes include, without limitation, "any dispute concerning the operation or *application* of any of the adjustments . . . described in subsection IX (j) . . . ." (Emphasis added.) Section IX (j) of the agreement, in its sixth step, describes the nonparticipating manufacturer adjustment. Accordingly, the underlying dispute over whether the independent auditor correctly decided *not to apply* the adjustment is a dispute concerning the application of the adjustment. Indeed, the state's brief in this court frames the underlying dispute as "whether the . . . [i]ndependent [a]uditor should have *applied* a [n]onparticipating [m]anufacturer [a]djustment . . . to reduce the . . . [p]etitioners' [a]nnual [p]ayments . . . for 2003 by $30

million."[11] (Emphasis added; internal quotation marks omitted.)

Our conclusion that the plain language of the agreement's arbitration provision requires that the underlying dispute be referred to arbitration is further supported by the structure of the payment system created under the agreement. Specifically, the agreement provides that each of the participating manufacturers will make a single annual payment, as calculated by the independent auditor, which is then allocated to the settling states based upon established percentages. Thus, under the agreement, any change in the manner in which a participating manufacturer's annual payment is calculated will impact the amount received by each of the fifty-two settling states. Accordingly, the agreement's broad referral to an arbitration panel of "[a]ny dispute, controversy or claim arising out of" the independent auditor's calculations or determinations reflects the necessity of creating a uniform, nationwide set of rules by which the independent auditor is to calculate the annual payments. Indeed, the trial court aptly stated that, if the interpretation of the rules on calculating annual payments were left up to the courts of each of the settling states, "fifty-two different sets of payment rules might emerge, sowing confusion, depriving [s]ettling [s]tates of mon[eys] needed for smoking cessation and other essential health programs, and causing wave after costly wave of new litigation."[12]

---

[11] The state similarly framed the dispute at oral argument before this court as concerning "the independent auditor's failure to *apply* an interim [nonparticipating manufacturer] . . . adjustment to the manufacturers' payment for 2003 . . . ." (Emphasis added.)

[12] Thirty-six of the settling states filed a brief, as amici curiae, in support of the position of the state. In their brief, the settling states amici disagree with the trial court's observation that allowing a dispute, such as the underlying one in the present case, to be resolved by the courts of each of the settling states would create differing sets of payment rules. Unlike the settling states amici, we can conceive of a variety of resolutions to the underlying dispute that would result in conflicting payment rules. For example, some courts could conclude that the nonparticipating manufacturer

We therefore conclude that the trial court properly granted the petitioners' petition to compel arbitration because the underlying dispute falls clearly within the agreement's arbitration provision.[13]

adjustment cannot be applied if all the settling states are enforcing diligently the qualifying statute, while other courts may take the contrary view. In addition, some courts could conclude that the independent auditor must await the significant factor determination prior to applying the adjustment, while other courts could conclude that the independent auditor is empowered to apply an assumption in the absence of such a determination. In both circumstances, the independent auditor could be left with the unenviable task of trying to calculate annual payments, in accordance with the agreement's strict timetable, under conflicting sets of rules.

In addition, during oral argument before this court, the state argued that the trial court's reasoning was flawed because the arbitration provision does not provide for a single nationwide resolution of disputes, but would result in fifty-two separate arbitration proceedings as each settling state would seek to select their own arbitration panels. We disagree with the state's interpretation of the arbitration provision because the arbitration provision expressly provides that "[e]ach of the two sides to the dispute shall select an arbitrator." Accordingly, this language envisions that the settling states would select one arbitrator and the participating manufacturers would select one arbitrator. Accord *State* v. *Philip Morris, Inc.*, 30 App. Div. 3d 26, 32, 813 N.Y.S.2d 71 (2006) (concluding that master settlement agreement provides for one nationwide, binding arbitration of dispute over whether independent auditor correctly determined not to apply nonparticipating manufacturer adjustment).

[13] We note that our conclusion is consistent with seven of the eight other state courts that have considered whether the dispute relating to the independent auditor's failure to apply the nonparticipating manufacturer adjustment is subject to the agreement's arbitration provision. The intermediate appellate court of one settling state and three trial courts of other settling states have concluded that the dispute over the independent auditor's failure to apply the adjustment is subject to the agreement's arbitration provision and most of these courts have noted that significant problems would arise if the courts of each of the settling states were permitted to interpret the rules by which the independent auditor was to calculate the annual payments. See *State* v. *Philip Morris, Inc.*, 30 App. Div. 3d 26, 33, 813 N.Y.S.2d 71 (2006) (order directing lower court to grant motion to compel arbitration of dispute over independent auditor's failure to apply nonparticipating manufacturer adjustment to 2003 annual payments); *Colorado* v. *R.J. Reynolds Tobacco Co.*, District Court, Docket No. 97CV3432 (Colo. Dist. July 19, 2006) (granting motion to compel arbitration over independent auditors failure to apply 2003 nonparticipating manufacturer adjustment as offset to 2006 annual payment); *Massachusetts* v. *Philip Morris, Inc.*, Superior Court, Docket No. 95-7378-J (Mass. Super. June 20, 2006) (granting motion to compel arbitration of dispute over independent auditor's failure to apply

The state claims that the agreement's arbitration provision must be read to limit arbitrable disputes to those relating to determinations and calculations that are "actually committed to, and actually made by, the [i]ndependent [a]uditor in the first instance." The state claims that the underlying dispute over the independent auditor's failure to apply the nonparticipating manufacturer adjustment therefore is not arbitrable because the independent auditor was not authorized to make this determination. Specifically, the state asserts that the independent auditor could not make the adjustment determination until the proper bodies made two predicate determinations, namely the significant factor determination and whether the qualifying statute was being enforced diligently. In support of this contention, the respondent analogizes the present case to cases from this jurisdiction and other jurisdictions in which either the scope of the arbitration required judicial determination of certain issues prior to referring a dispute to arbitration; see *Frager* v. *Pennsylvania General Ins.*

nonparticipating manufacturer adjustment to annual payments due in 2006); *Vermont* v. *Philip Morris USA, Inc.*, Superior Court, Docket No. S0463-06 (Vt. Super. July 14, 2006) (granting motion to compel arbitration over independent auditors failure to apply nonparticipating manufacturer adjustment to 2003 annual payments). In addition, the trial courts of three other settling states also have concluded that a dispute over whether a state is enforcing diligently its qualifying statute arises out of the independent auditor's determination whether to apply the nonparticipating manufacturer adjustment and is therefore subject to arbitration. See *Idaho* v. *Philip Morris, Inc.*, District Court, Docket No. CVOC9703239D (Idaho Dist. June 30, 2006) (granting motion to compel arbitration of dispute over whether Idaho has enforced diligently its qualifying statute); *Kentucky* v. *Brown & Williamson Tobacco Corp.*, Circuit Court, Docket No. 98-CI-01579 (Ky. Cir. June 13, 2006) (granting motion to compel arbitration of dispute over whether Kentucky has enforced diligently its qualifying statute); *New Hampshire* v. *Philip Morris USA*, Superior Court, Docket No. 06-E-132 (N.H. Super. June 5, 2006) (granting motion to compel arbitration of dispute over whether New Hampshire has enforced diligently its qualifying statute); but see *North Dakota* v. *Philip Morris, Inc.*, District Court, Docket No. 09-98-C-03778 (N.D. Dist. July 18, 2006) (denying motion to compel arbitration over whether North Dakota has enforced diligently its qualifying statute).

*Co.*, 155 Conn. 270, 274–77, 231 A.2d 531 (1967) (concluding that determination as to whether automobile involved in accident with plaintiff was "uninsured automobile," as defined in plaintiff's automobile insurance policy, was condition precedent to arbitration because arbitration provision limited to disputes over [1] insured's right to recover damages from owner or operator of "uninsured automobile," and [2] amount of such damages); *Eastern Minerals International, Inc.* v. *Cane Tennessee, Inc.*, 274 App. Div. 2d 262, 266, 713 N.Y.S.2d 29 (2000) (concluding that, because arbitration provision was restricted to dispute over apportionment of any condemnation award, preliminary dispute over whether taking had occurred was preliminary question reserved for judicial resolution); or the contract explicitly conditioned access to arbitration on the satisfaction of certain preconditions. See *White* v. *Kampner*, 229 Conn. 465, 473–75, 641 A.2d 1381 (1994) (concluding that contract provision requiring two mandatory negotiating sessions prior to invoking arbitration provision was condition precedent to arbitration); *Primavera Laboratories, Inc.* v. *Avon Products, Inc.*, 297 App. Div. 2d 505, 505–506, 747 N.Y.S.2d 16 (2002) (denying motion to compel arbitration because chosen method of arbitration requires that certain preliminary issues be resolved by court prior to invocation of arbitration). We disagree.

Section XI (c) of the agreement does not refer to any preconditions to arbitration and it does not contain the limitation, urged on us by the state, that only disputes over determinations or calculations "actually committed to, and actually made by, the [i]ndependent [a]uditor in the first instance" are arbitrable. In the absence of such preconditions and limitations, we generally are without authority to read them into the agreement's arbitration provision. See *Gary Excavating, Inc.* v. *North Haven*, 164 Conn. 119, 123, 318 A.2d 84 (1972)

(noting that, because contract did not state affirmatively that failure to comply with certain procedures barred arbitration, plaintiff did not waive arbitration by failing to comply with those procedures); see also *Goldberg* v. *Hartford Fire Ins. Co.*, supra, 269 Conn. 559 ("[w]here the language of the contract is clear and unambiguous, the contract is to be given effect *according to its terms*" [emphasis added; internal quotation marks omitted]); *Pesino* v. *Atlantic Bank of New York*, supra, 244 Conn. 94 (acknowledging that this court cannot add new terms to contract even where parties, if made aware of missing term, likely would have added it); *Collins* v. *Sears, Roebuck Co.*, 164 Conn. 369, 374, 321 A.2d 444 (1973) ("interpretation of a contract must be made in accordance with the terms employed in the instrument and a court cannot by that means disregard the words used by the parties or revise, add to, or create a new agreement"). Accordingly, the state's reliance on cases in which the parties' contract either restricted the scope of the arbitration provision to require judicial resolution of certain issues prior to arbitration or explicitly required that certain conditions be satisfied prior to arbitration is misplaced. See *White* v. *Kampner*, supra, 229 Conn. 473–75; *Frager* v. *Pennsylvania General Ins. Co.*, supra, 155 Conn. 274–77; *Primavera Laboratories, Inc.* v. *Avon Products, Inc.*, supra, 297 App. Div. 2d 505–506; *Eastern Minerals International, Inc.* v. *Cane Tennessee, Inc.*, supra, 274 App. Div. 2d 266.

Despite the lack of express language, the state argues that the scope of the arbitration provision is limited implicitly because interpreting the provision without such a limitation would lead to absurd results as any issue would become arbitrable if the independent auditor made a determination regarding it. We do agree that, under our well settled principles of contract interpretation, the scope of the arbitration provision cannot

be stretched to cover a dispute relating to a determination of an issue that is far removed from the independent auditor's role under the agreement because such an interpretation potentially would render the agreement's provision regarding the Superior Court's continuing jurisdiction superfluous. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 674, 791 A.2d 546 (2002) ("[t]he law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous"); *Waesche* v. *Redevelopment Agency*, 155 Conn. 44, 51, 229 A.2d 352 (1967) (noting that this court will not construe contract's language in manner that "would lead to a patently absurd and inequitable result"). Nonetheless, we are not faced with such a scenario in the present case because the agreement not only authorizes the independent auditor to make the initial determination whether to apply the nonparticipating manufacturer adjustment, it requires the independent auditor to make this determination.[14]

[14] The state contends that the independent auditor acknowledged that it had no authority to apply a nonparticipating manufacturer adjustment based on statements it made in its preliminary calculations and in a letter dated April 13, 2004. We disagree that the independent auditor made any such acknowledgment. In support of its position, the state cites the independent auditor's statement in its preliminary calculations that, because it had been informed that all settling states had a qualifying statute in full force and effect for the year in which the payment was being calculated, "no possible [nonparticipating manufacturer] adjustment is allocated to [the participating manufacturers]." This statement is not an acknowledgment by the independent auditor that it lacked the authority to apply the nonparticipating manufacturer adjustment. Rather, this statement reflects the independent auditor's initial determination not to apply the adjustment. The state next cites a letter sent by the independent auditor after it delivered its final calculation, in which it stated that it lacked the authority to resolve the ongoing dispute between certain participating manufacturers and the settling states over whether the adjustment should have been applied to the 2003 annual payments. The state reads the statement in this letter out of context. Because the letter was sent after the independent auditor had delivered its final calculation, in which it reaffirmed its decision to not apply the nonparticipating manufacturer adjustment, it strains logic to read the statement as an acknowledgment that it lacked the authority to determine initially whether the adjustment was applicable. Reading the statement in context,

The role of the independent auditor is set forth in § XI (a) (1) of the agreement, which provides in relevant part that the "[i]ndependent [a]uditor *shall* calculate and determine the amount of all payments owed pursuant to this [a]greement, the adjustments . . . thereto . . . the allocation of such payments [and] adjustments . . . among the [p]articipating [m]anufacturers and among the [s]ettling [s]tates . . . ." (Emphasis added.) Section IX (j) provides that "[t]he payments due under this [a]greement *shall* be calculated as set forth below," and the sixth step in that section provides that "the [nonparticipating manufacturer] adjustment *shall be applied* to the results of [the fifth step] pursuant to subsections IX (d) (1) and (d) (2) (or, in the case of payments due from the [s]ubsequent [p]articipating [m]anufacturers, pursuant to subsection IX [d] [4])." (Emphasis added.) Section IX (j) further instructs that "[i]n the event a particular adjustment, reduction or offset referred to in a clause below *does not apply* to the payment being calculated, the result of the [step] in question *shall* be deemed to be equal to the result of the immediately preceding [step]." (Emphasis added.) Accordingly, the agreement requires that the independent auditor calculate the annual payments and, in performing those calculations, the agreement further requires that the independent auditor determine, based on the language of the agreement and the information it has been provided, whether to apply the nonparticipating manufacturer adjustment. Nothing in the agreement allows the independent auditor simply to ignore whether a particular adjustment applies. Indeed, even if information necessary to its calculation of the annual payments is missing, § XI (d) (5) of the

it is apparent that the independent auditor was acknowledging that it lacks the authority to resolve a dispute regarding a determination it made in arriving at the final calculation. As we conclude in today's decision, this acknowledgment was appropriate because the agreement refers the resolution of such disputes to binding arbitration.

agreement explicitly directs the independent auditor to calculate the annual payments by employing an assumption or best estimate for the missing information.

The agreement's instructions to the independent auditor regarding how it is to present its preliminary calculations also reveal that the parties to the agreement envisioned that the independent auditor *must* make determinations regarding the applicability of adjustments, including the nonparticipating manufacturer adjustment. Specifically, § XI (d) (2) of the agreement requires the independent auditor to deliver to all the parties to the agreement "detailed preliminary calculations . . . of the amount due from each [p]articipating [m]anufacturer . . . *showing all applicable . . . adjustments* . . . and setting forth all the information on which the [i]ndependent [a]uditor relied in preparing such [p]reliminary [c]alculations . . . ." (Emphasis added.) Accordingly, this section provides, yet again, that the independent auditor is tasked, under the agreement, with the responsibility of making determinations as to when a particular adjustment applies.

Finally, the arbitration provision itself supports the view that the parties to the agreement intended the independent auditor to make the initial determinations regarding the applicability of adjustments to the annual payments. Specifically, the arbitration provision provides that a dispute that arises or relates to the independent auditor's determinations or calculations is one that concerns the "*application* of any of the *adjustments*," including the nonparticipating manufacturer adjustment. (Emphasis added.) In sum, the agreement provides that the independent auditor, in calculating the annual payments due under the agreement, is not only empowered to, but must make an initial determination regarding the applicability of any adjustments, including the nonparticipating manufacturer adjustment. Any challenge as to whether the independent auditor's initial

determination was, in fact, correct, under the circumstances, is an issue that the agreement reserves for binding arbitration.

The judgment is affirmed.

In this opinion the other justices concurred.